UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAVID JONES, Individually and on behalf of
Oneida Nations Enterprises LLC 401(k) Plan and
on behalf of all the similarly situated Participants
and beneficiaries of the plan; KEITH WILCOX,
Individually and on behalf of Oneida Nations
Enterprises LLC 401(k) Plan and on behalf of all
the similarly situated Participants and beneficiaries
of the plan; and KEELY VONDELL, Individually and
on behalf of Oneida Nations Enterprises LLC 401(k)
Plan and on behalf of all the similarly situated
Participants and beneficiaries of the plan,

       Plaintiffs,

v.                      5:24-CV-1596
                       (GTS/ML)

TURNING STONE ENTERPRISES LLC, formerly
known as Oneida Nations Enterprises, LLC;
EMPLOYEE BENEFITS PLAN & INVESTMENT
COMMITTEE OF THE ONEIDA NATION
ENTERPRISES, LLC 401(k) PLAN; and JOHN and
JANE DOES 1-30, in their capacities as members of
the Administrative Committee,

       Defendants.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| MILBERG COLEMAN BRYSON<br>PHILLIPS GROSSMAN PLLC<br> Counsel for Plaintiffs<br>100 Garden City Plaza, Suite 408<br>Garden City, NY 11530 | RANDI A. KASSAN, ESQ. |
| 227 W. Monroe Street, Suite 2100<br>Chicago, IL 60606 | GARY M. KLINGER, ESQ. |
| 800 S. Gay Street, Suite 1100<br>Knoxville, TN 37929 | ALEXANDR RUDENCO, ESQ. |
| CARELLA BYRNE CECCHI | KEVIN G. COOPER, ESQ. |

BRODY & AGNELLO
  Co-counsel for Plaintiffs
5 Becker Farm Road
Roseland, NJ 07068

ONEIDA INDIAN NATION                         MEGHAN MURPHY BEAKMAN, ESQ.
  Counsel for Defendants
5218 Patrick Road
Verona, NY 13478

JACKSON LEWIS P.C.                             BENJAMIN M. WILKINSON, ESQ.
  Co-Counsel for Defendants
677 Broadway, Ninth Floor
Albany, NY 12207

601 Poydras Street, Suite 1400                  RENE E. THORNE, ESQ.
New Orleans, LA 70130

ZUCKERMAN SPAEDER LLP                 IVANO M. VENTRESCA, ESQ.
  Co-Counsel for Defendants                     MICHAEL R. SMITH, ESQ.
2100 L Street NW, Suite 400
Washington, DC 20037

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this action pursuant to the Employee Retirement Income Security Act ("ERISA") filed by David Jones, Keith Wilcox, and Keely Vondell ("Plaintiffs") against Turning Stone Enterprises ("Turning Stone"), the Employee Benefits Plan & Investment Committee of the Oneida Nation Enterprises, LLC 401(k) Plan ("Committee"), and John and Jane Does 1-30, is a motion filed by Defendant Turning Stone and Defendant Committee (collectively "Defendants") to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction based on tribal sovereign immunity. (Dkt. No. 21.) For the reasons set forth below, Defendants' motion is denied.

**I.  RELEVANT BACKGROUND**

A.     **Plaintiffs' Complaint**

Generally, in Plaintiffs' Complaint, they assert the following six claims based on Defendants' management of the 401(k) plan that was provided to them and other putative class members as a result of their employment with Defendant Turning Stone: (1) a claim for breach of the fiduciary duty of prudence against Defendant Committee and the John and Jane Doe Defendants; (2) a claim for breach of the fiduciary duty of loyalty against Defendant Committee and the John and Jane Doe Defendants; (3) a claim for breach of co-fiduciary duties against Defendant Committee and the John and Jane Doe Defendants; (4) a claim for breach of the fiduciary duty of prudence against Defendant Turning Stone; (5) a claim for engaging in prohibited transactions in violation of 29 U.S.C. § 1106(a) against Defendant Committee and the John and Jane Doe Defendants; and (6) a claim for engaging in prohibited transactions in violation of 29 U.S.C. § 1106(b) against all Defendants. (*See generally* Dkt. No. 1.) Because the sole issue on the pending motion to dismiss relates to whether Defendants are immune from suit by virtue of the Oneida Nation's status as a federally recognized Indian tribe, the Court will not address any specifics of the factual allegations underlying Plaintiffs' claims in this Decision and Order, but will respectfully refer the reader to the Complaint. (*Id.*)

B.     **Parties' Briefing on Defendants' Motion to Dismiss**

1.     **Defendants' Memorandum of Law**

Generally, in their motion, Defendants make three arguments. (Dkt. No. 21, Attach. 1.) First, Defendants argue that the Oneida Nation, as a federally recognized tribe, is immune from suit and, because Defendants are arms or instrumentalities of the Oneida Nation, they too are immune from suit. (*Id.* at 15-20.) More specifically, Defendants argue that they are controlled

by the Oneida Nation and exist solely to serve its interests, and that Turning Stone and the Turning Stone Resort Casino have previously been found to be instrumentalities of the Oneida Nation that share its immunity. (*Id.*) They also argue that the sponsorship and administration of the 401(k) plan at issue here serves a governmental role because the Oneida Nation is a sovereign entity and its hiring and maintenance of its employees serves the Nation and its activities and goals. (*Id.*)

Second, Defendants argue that ERISA does not abrogate the Onieda Nation's sovereign immunity. (*Id.* at 20-24.) More specifically, Defendants argue that the text of ERISA does not clearly or expressly abrogate sovereign tribal immunity (which is notable because it does specifically waive immunity related to certain actions against the Secretary of Labor), and the fact that ERISA rules and requirements might apply to certain tribal plans does not mean that there has been an abrogation of sovereign immunity specifically as to private civil enforcement suits because whether a statute is applicable to a tribe and whether a private citizen may sue to enforce that statute despite the existence of sovereign immunity are two distinct questions requiring different analyses. (*Id.*)

Third, Defendants argue that the Oneida Nation also has not waived its tribal sovereign immunity. (*Id.* at 24-26.) More specifically, they argue that a statement in the Summary Plan Description for the relevant plan to the effect that participants can "file suit in a court of competent jurisdiction" does not constitute a waiver of immunity because it permits suit only where the relevant court has jurisdiction and, in light of the Nation's sovereign immunity, this Court lacks jurisdiction (and therefore is not "a court of competent jurisdiction"). (*Id.*)

    **2.**    **Plaintiffs' Opposition Memorandum of Law**

Generally, in opposition to Defendants' motion, Plaintiffs make two arguments. (Dkt. No. 29.) First, Plaintiffs argue that Congress abrogated tribal sovereign immunity through amendments made to ERISA in 2006. (*Id.* at 8-18.) More specifically, Plaintiffs argue that ERISA as amended clearly applies to the relevant plan at issue here because such plan is commercial (rather than governmental) given that it is open to all employees (not just those performing essential governmental functions) and the ERISA amendments exempt only governmental plans from its scope and enforcement. (*Id.*)

Second, Plaintiffs argue that Defendants have waived sovereign immunity related to Plaintiffs' ERISA rights because the statement that Plaintiffs may pursue their rights in a court of competent jurisdiction can only mean a federal court as to an ERISA claim, and the provision of such a resolution procedure is a sufficient expression of waiver. (*Id.* at 18-21.)

### 3.    Defendant's Reply Memorandum of Law

Generally, in reply to Plaintiffs' opposition, Defendants make three arguments. (Dkt. No. 32.) First, Defendants argue that Plaintiffs have conceded that they are instrumentalities of the Oneida Nation and thus entitled to sovereign immunity unless Congress has abrogated that immunity or it has been waived. (*Id.* at 5.)

Second, Defendants argue that Plaintiffs have not shown that ERISA abrogates the Oneida Nation's immunity for the following reasons: (a) they have not identified any clear statement in the text of the statute expressing an abrogation; (b) the 2006 amendments do not represent an abrogation of immunity, but rather a narrowing of when ERISA *applies* to tribal plans (i.e., by excluding from ERISA tribal government plans where those had previously been subject to ERISA); (c) the content of the legislative history is irrelevant if the text, as here, does

5

not clearly express abrogation of immunity; and (d) the fact that ERISA is applicable to some tribal plans does not constitute an express abrogation of sovereign immunity related to the ability to be sued in a federal court because applicability of a statute and abrogation of immunity to suit pursuant to that statute are distinct questions. (*Id.* at 6-11.)

Third, Defendants argue that Plaintiffs have also not shown that the Oneida Nation has provided a clear waiver of its sovereign immunity because they have not offered any responses to the arguments Defendants actually raised, and Plaintiffs' reliance on *C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411 (2001), is unavailing because the circumstances of that case are materially distinguishable. (*Id.* at 11-13.)

## II. LEGAL STANDARDS GOVERNING A MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1)

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Generally, "[a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12[b][1]). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113 (citing *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 [2d Cir. 1986]).

More specifically, "[w]hen . . . a jurisdictional challenge under Fed. R. Civ. P. 12(b)(1) is addressed to the complaint, a court accepts as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff." *Lunney v. U.S.*, 319 F.3d 550, 554 (2d Cir. 2003) (citing, *inter alia*, *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll.*,

6

128 F.3d 59, 63 [2d Cir. 1997]); *see also Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (stating that a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12[b][1] only after "[c]onstruing all ambiguities and drawing all inferences" in a plaintiff's favor) (citing *Makarova*, 201 F.3d at 113).

However, when a defendant challenges the factual basis for the plaintiff's assertion of jurisdiction, "[j]urisdiction must be shown affirmatively, and that showing is not made [merely] by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998); *accord, APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003); *see also Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) ("In a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both. . . . If the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations . . . , the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff . . . . But where evidence relevant to the jurisdictional question is before the court, the district court . . . may refer to that evidence.") (internal quotation marks and citations omitted).

In such a case, "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]); *see also Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003) ("Plaintiffs bear the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists.") (internal quotation marks omitted).

**III.    ANALYSIS**

After careful consideration, the Court answers the question of whether it has subject-matter jurisdiction over Plaintiffs' ERISA claims in the affirmative for the reasons stated in Plaintiffs' memorandum of law. *See, supra,* Part I.B.2 of this Decision and Order. To those reasons, the Court adds the following analysis, which is intended to supplement (and not supplant) the reasons identified by Plaintiffs.

"In order to determine whether Congress has abrogated the States' sovereign immunity, we ask two questions: first, whether Congress has 'unequivocally expresse[d] its intention to abrogate the immunity,' . . . and second, whether Congress has acted 'pursuant to a valid exercise of power.'" *Seminole Tribe of Florida v. Florida*, 517 U.S. 1114, 1123 (1996) (quoting *Green v. Mansour*, 474 U.S. 64, 68 [1985]). "Congress' intent to abrogate the States' immunity from suit must be obvious from 'a clear legislative statement.'" *Seminole Tribe*, 517 U.S. at 1123 (quoting *Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 786 [1991]). These principles apply equally to abrogation of the sovereign immunity of federally recognized Indian tribes. *See Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382, 385-86 (2023) (noting that "[u]nder our precedents, we will not find an abrogation of tribal sovereign immunity unless Congress has conveyed its intent to abrogate in unequivocal terms," and that the "well-settled rule" "applies to federally recognized tribes no less than other defendants with sovereign immunity") (quoting *Fin. Oversight and Mgmt Bd. for P.R. v. Centro De Periodismo Investigativo*, 598 U.S. 339, 346 (2023); citing *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 [1978]).

"The standard for finding a congressional abrogation is stringent." *Fin. Oversight and Mgmt Bd. for P.R.*, 598 U.S. at 346. Specifically, Congress' intent to abrogate sovereign

8

immunity must be made "'unmistakably clear in the language of the statute.'" *Id.* (quoting *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 [2000]). In other words, the abrogation must be unambiguous and unequivocal. *Lac du Flambeau*, 599 U.S. at 387; *Fin. Oversight and Mgmt Bd. for P.R.*, 598 U.S. at 346-47. Under this standard, "[i]f 'there is a plausible interpretation of the statute' that preserves sovereign immunity, Congress has not unambiguously expressed the requisite intent." *Lac du Flambeau*, 599 U.S. at 388 (quoting *FAA v. Cooper*, 566 U.S. 284, 290 [2012]). However, "'Congress need not state its intent in any particular way.'" *Lac du Flambeau*, 599 U.S. at 388 (quoting *Cooper*, 566 U.S. at 291). "Nor need Congress 'make its clear statement in a single [statutory] section.'" *Lac du Flambeau*, 599 U.S. at 388 (quoting *Kimel*, 528 U.S. at 76). "The clear-statement question is simply whether, upon applying 'traditional' tools of statutory interpretation, Congress's abrogation of tribal sovereign immunity is 'clearly discernable' from the statute itself." *Lac du Flambeau*, 599 U.S. at 388 (quoting *Cooper*, 566 U.S. at 291). In making this inquiry, a court must focus on the statute itself rather than relying on the legislative history of the statute. *Dept. of Agriculture Rural Dev. Rural Housing Serv. v. Kirtz*, 601 U.S. 42, 49 (2024).

In this case, Plaintiffs argue that amendments made to ERISA in 2006 provide a clear expression of Congress' intent to abrogate tribes' sovereign immunity related to pension plans provided in the context of commercial activities. The language of the 2006 amendment reads as follows:

> The term "governmental plan" includes a plan which is established and maintained by an Indian tribal government (as defined in section 7701(a)(40) of Title 26), a subdivision of an Indian tribal government (determined in accordance with section 7871(d) of Title 26), or an agency or instrumentality of either, and all of the participants of which are employees of such entity substantially all

9

>     whose services as such an employee are in the performance of
>     essential government functions but not in the performance of
>     commercial activities (whether or not an essential government
>     function).

29 U.S.C. § 1002(32). The relevant regulatory and enforcement provisions of ERISA notably do not apply to governmental plans. 29 U.S.C. § 1003(b)(1) (noting that "[t]he provisions of this subchapter shall not apply to any employee benefit plan if . . . such plan is a governmental plan (as defined in section 1002(32) of this title)").

The fact that only governmental plans administered by tribes are exempted from ERISA necessarily implies that a commercial plan administered by a tribe would be subject to ERISA. This amendment should not be read in isolation, however, but rather in the context of other relevant provisions within ERISA. Specifically, ERISA's provisions are indicated to apply (with noted exceptions) "to any employee benefit plan if it is established or maintained—(1) by any employer[1] engaged in commerce or in any industry or activity affecting commerce; or (2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or (3) by both." 29 U.S.C. § 1003(a). As noted above,

---

[1] "Employer" is defined by the statute as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5). Further, a "person" is defined as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(9). Although this definition of "person" does not specifically list Indian tribes, such fact does not mean that tribes are not considered "employers" for the purposes of ERISA. Indeed, the 2006 amendment specifically discusses governmental plans provided by the tribe for the *employees* of the tribal government or a subdivision, agency, or instrumentality thereof. 29 U.S.C. § 1002(32). This amendment provides a clear expression that Congress does, in fact, consider Indian tribes to be "persons" and "employers" in the context of provision of a benefit plan.

one of the explicit exceptions to which "[t]he provisions of this subchapter shall not apply" is where the plan is a governmental plan. 29 U.S.C. § 1003(b)(1). The subchapter in question (Subchapter I) outlines the various requirements, responsibilities, and duties related to the administration and management of a covered plan, as well as enforcement mechanisms for failure to comply with those requirements, responsibilities, and duties. Taken together, these provisions, including the 2006 amendment which specifically included tribal non-commercial plans in the definition of a governmental plan, evince an intent that *commercial* plans administered by Indian tribes are covered by ERISA and subject to the provisions in Subchapter I.

      Defendants argue that whether ERISA applies to a commercial plan administered by an Indian tribe is not the end of the inquiry because whether a statute applies to an entity and whether it abrogates that entity's sovereign immunity to be free from private civil enforcement are two distinct questions. Defendants' argument fails in this instance, however, because the above-discussed definitions and provisions, including the 2006 amendment that specifically includes non-commercial tribal plans in the definition of governmental plans, explicitly apply "[f]or the purposes of this subchapter," which is, as discussed above, Subchapter I. 29 U.S.C. § 1002; *see also* 29 U.S.C. § 1003(a) (indicating that barring noted exceptions, "*this subchapter* shall apply to any employee benefit plan" that is established or maintained, relevantly, "by any employer engaged in commerce or in any industry or activity affecting commerce") (emphasis added). As a result, the statute makes clear that, barring the application of explicit exceptions not relevant here, *all* of Subchapter I applies to a plan that comes within the scope of 29 U.S.C. § 1003, which, per the 2006 amendment, includes commercial tribal plans. The relevant civil

enforcement provision, Section 1132, is part of Subchapter I, which means the definitions in 29 U.S.C. § 1002, including the 2006 amendment, and 29 U.S.C. § 1003 are all directly relevant to the interpretation and applicability of 29 U.S.C. § 1132. If Congress' choice to specifically include tribal non-commercial plans within the definition of governmental plans (thereby exempting such plans from ERISA's requirements) leads to the conclusion that tribal commercial plans are subject to the ERISA provisions in Subchapter I, then that statutory grounding also necessitates a finding that Congress intended tribal commercial plans to be subject to the civil enforcement provision of ERISA that is, again, also part of Subchapter I. That Section 1132 does not explicitly mention Indian tribes or declare in any specific terms that their sovereign immunity has been abrogated is not dispositive; as the Supreme Court has stated, there are no "magic[]words" that Congress needs to use to express an abrogation. *Lac du Flambeau*, 599 U.S. at 394 ("Congress did not have to include a specific reference to federally recognized tribes in order to make clear that it intended for tribes to be covered by the abrogation provision. As long as Congress speaks unequivocally, it passes the clear-statement test—regardless of whether it articulated its intent in the *most* straightforward way.") (emphasis in original). Neither is the fact that a subsection within Section 1132 permits certain suits against the Secretary of Labor indicative that Congress did not intend to abrogate the sovereign immunity of tribes. 29 U.S.C. § 1132(k). Taken in context, the various relevant ERISA provisions indicate that, for the purposes of Subchapter I, tribal plans that do not fall within the definition of a governmental plan by virtue

of their being commercial are subject to ERISA's provisions and those provisions include the civil enforcement mechanisms listed in Section 1132.[2]

Courts that have rendered decisions on this specific issue have almost uniformly determined that the 2006 amendment to ERISA exempting government plans administered by tribes acts as an expressed intention that non-governmental, or commercial, plans administered by tribes are subject to ERISA and the tribe's sovereign immunity is abrogated as to those plans. *See, e.g., Meilstrup v. Standing Rock Sioux Tribe*, 25-CV-0162, 2025 WL 2877904, at *3-4 (D.N.D. Oct. 9, 2025) (concluding that operation of a non-governmental plan waived the tribe's immunity as to the ERISA claims); *Coppe v. Sac & Fox Casino Healthcare Plan*, 14-CV-2598, 2015 WL 6806540, at *3-4 (D. Kan. Nov. 5, 2015) (finding that the 2006 amendment to ERISA clearly indicates that ERISA applies to non-governmental, commercial plans and therefore constitutes a waiver of tribes' sovereign immunity with respect to those plans); *Vandever v. Osage Nation Enter., Inc.*, 06-CV-0380, 2009 WL 702776, at *3-4 (N.D. Okla. Mar. 16, 2009) (finding that the language of the amendment "makes clear that Congress *has* abrogated sovereign immunity of the tribes with respect to certain ERISA plans"). This Court finds, as these other courts have, that the relevant provisions of ERISA, including the 2006 amendment, express a

---

[2] Although Defendants argue that there has been no showing of a clear abrogation of sovereign immunity under either of the types of situations where such waivers have been recognized as discussed in *Kirtz* (Dkt. No. 32, at 7), the Court notes that the "series of statutory directions" and application of statutory definitions through which the Supreme Court determined abrogation was presented in the Fair Credit Reporting Act is quite similar to the interpretation of various ERISA definitions and provisions that the Court has conducted here. *Kirtz*, 601 U.S. at 50-51. Indeed, here, just as in *Kirtz*, dismissing the suit would "effectively 'negate' suits Congress has clearly authorized," i.e., those related to commercial tribal benefits plans, which are plainly not exempted from ERISA in the 2006 amendment. *Id.* at 51.

13

clear intent that the sovereign immunity to suit for Indian tribes is abrogated as to commercial plans those tribes provide for their employees.

Further, there has been nothing presented with regard to the current motion that would suggest that the relevant plan would not be considered a commercial plan that falls under the purview of ERISA. Defendants acknowledge in their motion that, as the Complaint states, "the plan 'covers substantially all eligible employees of Turning Stone Enterprises.'" (Dkt. No. 21, Attach. 1, at 13.) They also acknowledge that "most members of the putative class in this case work" at "Turning Stone Resort Casino," which, it notes, has been recognized by the Second Circuit in a different lawsuit as "a commercial enterprise." (*Id.* at 15.) Defendants also assert that the plan is used "to serve the Nation's goals to attract and provide for employees, *mostly working in Nation businesses* but some, like Plaintiffs, performing governmental policing and other functions." (*Id.* at 19 [emphasis added].) Based on Defendants' own statements, it does not appear that the plan here would meet the definition of a governmental plan because it is not one in which "substantially all" of the employees' services "are in the performance of essential government functions but not in the performance of commercial activities (whether or not an essential government function)." 29 U.S.C. § 1002(32). If the plan does not meet the definition of a governmental plan, then it is subject to ERISA's provisions and the abrogation of sovereign immunity for claims pursuant to ERISA.

Because ERISA contains a clear abrogation of sovereign immunity and the information presented in Plaintiffs' Complaint and on this motion suggests that the plan is subject to ERISA, the Court finds that it has subject-matter jurisdiction over Plaintiffs' claims.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss for lack of subject-matter jurisdiction (Dkt. No. 21) is **DENIED**.[3]

Dated: December 9, 2025
      Syracuse, New York

                                              _____
                                              Glenn T. Suddaby
                                              U.S. District Judge

---

[3] Pursuant to the Court's Text Order of February 21, 2025, Defendants are permitted to file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) within thirty (30) days of the date of this Decision and Order. (Dkt. No. 19.)